1 | SEYFARTH SHAW LLP
2 | Michele J. Beilke (SBN 194098)
  | mbeilke@seyfarth.com
3 | Julia Y. Trankiem (SBN 228666)
  | jtrankiem@seyfarth.com
4 | 601 South Figueroa Street, Suite 3300
  | Los Angeles, California 90017-5793
5 | Telephone:   (213) 270-9600
  | Facsimile:    (213) 270-9601

6 | SEYFARTH SHAW LLP
7 | David J. Kim (SBN 349802)
  | dakim@seyfarth.com
8 | 2029 Century Park East, Suite 3500
  | Los Angeles, California 90067-3021
9 | Telephone:   (310) 277-7200
  | Facsimile:    (310) 201-5219

10 | Attorneys for Defendants
   | ALERE SAN DIEGO, INC. and ABBOTT
11 | LABORATORIES

12

13

14 | **UNITED STATES DISTRICT COURT**

15 | **SOUTHERN DISTRICT OF CALIFORNIA**

16

17 | ALEXIS BRIMINGHAM, on behalf of others similarly situated,
18 | Plaintiffs,
19 | v.
20 | ALERE SAN DIEGO, INC.; ABBOTT LABORATORIES; and DOES 1 through 50, inclusive,
21
22 | Defendants.

Case No. **'25 CV 0122 JO    DEB**

[San Diego County Superior Court Case No. 24CU028634C]

**DEFENDANTS' NOTICE OF REMOVAL**

*Concurrently filed with:*

1. *Civil Cover Sheet;*
2. *Declaration of Michele Beilke;*
3. *Declaration of Stanford Tuupo;*
4. *Corporate Disclosure Statement;*
5. *Notice of Interested Parties;*
6. *Notice of Related Case; and*
7. *Certificate of Service.*

Complaint Filed: December 16, 2024

1
DEFENDANTS' NOTICE OF REMOVAL

Case No. _____

315653364v.8

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA:**

**PLEASE TAKE NOTICE** that Defendants Alere San Diego, Inc. ("Alere") and Abbott Laboratories ("Abbott") (collectively, "Defendants") file this Notice of Removal, asserting federal jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") pursuant to 28 U.S.C. §§ 1332(d), 1441(a), 1446, and 1453, to effectuate the removal of the above-captioned action, which was originally brought in the Superior Court of the State of California for the County of San Diego, to the United States District Court for the Southern District of California. This Court has original jurisdiction over the action pursuant to CAFA for the following reasons:

## I. BACKGROUND

1.      On December 16, 2024, Plaintiff Alexis Brimingham ("Plaintiff") filed a class action complaint in the Superior Court of the State of California for the County of San Diego, titled *Alexis Brimingham v. Alere San Diego, Inc.; Abbott Laboratories; and Does 1 through 50, inclusive,* Case No. 24CU028634C ("Complaint"). The Complaint asserts ten (10) causes of action for: (1) Failure to Pay All Wages Owed; (2) Failure to Pay All Overtime Wages; (3) Meal Period Violations; (4) Rest Period Violations; (5) Paid Sick Leave Violations; (6) Untimely Payment of Wages; (7) Wage Statement Violations; (8) Waiting Time Penalties; (9) Failure to Reimburse Business Expenses; and (10) Unfair Competition.

2.      On December 18, 2024, Plaintiff served Alere via Process Server with the Summons, Complaint, Civil Case Cover Sheet, Notice of Case Assignment and Case Management Conference, and Alternative Dispute Resolution forms. A true and correct copy of these documents served on Alere is attached as **Exhibit A** to the Declaration of Michele J. Beilke in support of Defendants' Notice of Removal ("Beilke Decl."), filed herewith.

3.      On December 18, 2024, Plaintiff served Abbott via Process Server with the Summons, Complaint, Civil Case Cover Sheet, Notice of Case Assignment and Case

DEFENDANTS' NOTICE OF REMOVAL

Management Conference, and Alternative Dispute Resolution forms.  A true and correct copy of these documents served on Abbott is attached as **Exhibit B** to the Declaration of Michele J. Beilke.

4.      On January 17, 2025, Defendants, by and through their undersigned counsel of record, filed their Answer to Plaintiff's Complaint in the Superior Court of the State of California for the County of San Diego.  A true and correct copy of Defendants' Answer filed in state court is attached hereto as **Exhibit C** to the Declaration of Michele J. Beilke.

5.      **Exhibits A**, **B**, and **C** constitute all of the pleadings properly served on and/or filed in the state court action prior to filing this Notice of Removal.  (Beilke Decl., ¶ 5.)

## II. TIMELINESS OF REMOVAL

6.      Notice of removal is timely if it is filed within 30 days after the service of the complaint or summons.  28 U.S.C. § 1446(b)(1) ("The notice of removal … shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant").

7.      The service of process which triggers the 30-day period to remove is governed by state law.  *Whidbee v. Pierce Cty.*, 857 F.3d 1019, 1023 (9th Cir. 2017) ("When a case is removed from state to federal court, the question whether service of process was sufficient prior to removal is governed by state law").

8.      Here, the service of the Summons and Complaint was deemed complete on December 18, 2024, when Plaintiff served Defendants with those documents via Process Server.  Defendants timely filed this Notice of Removal on January 17, 2025 (this was within 30 days after service of the Summons and Complaint).

## III. REMOVAL UNDER THE CLASS ACTION FAIRNESS ACT

9.      Under CAFA, district courts have original jurisdiction for class actions "if [1] the class has more than 100 members, [2] the parties are minimally diverse, and [3] the amount in controversy exceeds $5 million."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 552 (2014) (citing 28 U.S.C. § 1332(d)(2), (5)(B)).  As set forth

DEFENDANTS' NOTICE OF REMOVAL

315653364v.8

below, each of these three requirements is met and thus this action is properly removable, pursuant to 28 U.S.C. § 1441(a).

### A.    The Class Action Includes More Than 100 Potential Class Members

10.    A removal under CAFA requires at least 100 members in a proposed class. *See* 28 U.S.C. § 1332(d)(5)(B) (CAFA jurisdiction does not apply to class action in which "the number of members of all proposed plaintiff classes in the aggregate is less than 100").

11.    Here, the Complaint sets forth the following proposed class definition: "All current and former non-exempt employees who worked for Defendants in California at any time from four years (plus the additional 178-day statutory tolling period under Emergency Rule 9) prior to the filing of this action through date of class certification.)"  (Compl., ¶ 18(a).)  Based on the December 16, 2024 filing date of the Complaint, the proposed class period covers the time period of **June 21, 2020 to the present.**[1]  Notably, Plaintiff concedes that "[t]he class is so numerous that joinder of all class members is impracticable."  (Compl., ¶ 20(a).)

12.    Based on the proposed class definition, Defendants employed more than 100 current and former non-exempt employees in California between June 21, 2020 and the present.  (Declaration of Stanford Tuupo ("Tuupo Decl.") ¶ 6a.)  Even assuming that the 178-day statutory tolling period is not applicable in this instance, Defendants employed more than 100 current and former non-exempt employees in California between December 16, 2020 and the present.  (Tuupo Decl., ¶ 6b.)

---

[1] Defendants hereby preserve their objection to Plaintiff's argument that Emergency Rule 9 applies here.  Notwithstanding, for purposes of this Removal, Defendants may rely on the class definition proposed by Plaintiff in the Complaint to calculate the amount in controversy; the amount in controversy represents only the "amount at stake in the underlying litigation, not the likely liability … just because a defendant might have a valid defense that will reduce recovery to below the jurisdictional amount does not mean the defendant will ultimately prevail on that defense."  *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 774 (9th Cir. 2020) (holding that the district court erred in considering statute of limitations defense into calculations for amount in controversy).

Case No. _____

DEFENDANTS' NOTICE OF REMOVAL

315653364v.8

**B.    There is Minimal Diversity**

13.    CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction – that is, at least one purported class member must be a citizen of a state different from any named defendant.  28 U.S.C. § 1332(d)(2)(A) ("any member of a class of plaintiffs is a citizen of a State different from any defendant").  Here, minimal diversity exists: Plaintiff is a citizen of a state (California) that is different from the state of citizenship of Alere (Delaware and Illinois) or Abbott (Illinois).

**1.    Plaintiff is a Citizen of California**

14.    For diversity purposes, a natural person's state citizenship is determined by that person's domicile – *i.e.*, one's "permanent home, where [that person] resides with the intention to remain or to which [that person] intends to return." *Kantor v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).  A party's citizenship is determined at the time the lawsuit was filed.  *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1236 (9th Cir. 2008) ("[T]he jurisdiction of the court depends upon the state of things at the time of the action [was] brought"); *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) ("For purposes of diversity jurisdiction, an individual is a citizen of his or her state of domicile, which is determined at the time the lawsuit is filed") (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)).

15.    Plaintiff alleges that she "worked for Defendants in California as a non-exempt employee from about October 2023 to September 2024."  (Compl., ¶ 11.) According to Alere's personnel records, Plaintiff's last known address was in San Diego, California.  (Tuupo Decl., ¶ 7.)  Therefore, Plaintiff has been, at all relevant times, a citizen and resident of the State of California.

16.    Accordingly, Defendants are informed and believe that Plaintiff is, at all relevant times for the purposes of this removal, and has been, a citizen of California.

Case No. _____
DEFENDANTS' NOTICE OF REMOVAL

315653364v.8

### 2. Alere and Abbott are Citizens of Delaware and Illinois

17.     For diversity purposes, a corporation is deemed a citizen of the state "by which it has been incorporated" and of the state "where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

18.     Alere is now and, ever since this action commenced, has been, incorporated under the laws of the State of Delaware, with its principal place of business in Illinois. (Beilke Decl., ¶ 6, **Ex. D** (Alere Statement of Information).)  Thus, for purposes of diversity jurisdiction, Alere is a citizen of Delaware and Illinois.

19.     Abbott is now and, has been, at all times since this action commenced, incorporated under the laws of the State of Illinois, with its principal place of business in Illinois.  (Beilke Decl., ¶ 7, **Ex. E** (Abbott Statement of Information).)  Thus, for purposes of diversity jurisdiction, Abbott is a citizen of Illinois.

20.     Because Plaintiff is a citizen of California, and Defendants are citizens of Delaware and Illinois, minimal diversity exists for purposes of CAFA.

### 3. The Court Should Disregard Citizenship of DOE Defendants

21.     The other defendants named in the Complaint are merely fictitious parties identified as "DOES 1 through 50" whose citizenship shall be disregarded for purposes of this removal.  28 U.S.C. § 1441(b) (for purposes of removal, "the citizenship of defendants sued under fictitious names shall be disregarded"); *see also Soliman v. Philip Morris, Inc.*, 311 F.3d 966, 971 (9th Cir. 2002) ("citizenship of fictitious defendants is disregarded for removal purposes and becomes relevant only if and when the plaintiff seeks leave to substitute a named defendant").

22.     Thus, the existence of "DOES 1 through 50" in the Complaint does not deprive this Court of jurisdiction.  *Abrego v. Dow Chemical Co.*, 443 F.3d 676, 679-80 n.4 (9th Cir. 2006) (rule applied in CAFA removal, "[f]or purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded").

Case No. _____

DEFENDANTS' NOTICE OF REMOVAL

315653364v.8

1
2

### C.    The Amount in Controversy Exceeds the $5 Million Statutory Threshold Under CAFA

3

23.    CAFA requires that the amount in controversy exceeds $5 million, exclusive

4

of interest and costs.  28 U.S.C. § 1332(d)(2).  Under CAFA, the claims of the individual

5

members in a class action are aggregated to determine if the amount in controversy

6

exceeds the sum or value of $5,00,000.  28 U.S.C. § 1332(d)(6).

7

24.    In addition, Congress intended for federal jurisdiction to be appropriate under

8

CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the

9

viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of

10

relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)."  Senate Judiciary

11

Committee Report, S. Rep. No. 109-14, at 42 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3,

12

40.  The Senate Judiciary Committee's Report on the final version of CAFA also makes

13

clear that any doubts regarding the maintenance of interstate class actions in state or federal

14

court should be resolved in favor of federal jurisdiction.  *Id.* at 42–43 ("if a federal court is

15

uncertain about whether 'all matters in controversy' in a purposed class action 'do not in

16

the aggregate exceed the sum or value of $5,000,000, the court should err in favor of

17

exercising jurisdiction over the case. … Overall, new section 1332(d) is intended to expand

18

substantially federal court jurisdiction over class actions. Its provision should be read

19

broadly, with a strong preference that interstate class actions should be heard in a federal

20

court if properly removed by any defendant").

21

25.    Here, even if the Complaint does not allege an amount in controversy, the

22

removing defendant only needs to prove by a **preponderance of the evidence** that the

23

amount in controversy exceeds that minimum.  *Dart Cherokee Basin Operating Co., LLC*,

24

135 S. Ct. at 553–54 ("Removal is proper on the basis of an amount in controversy asserted

25

by the defendant if the district court finds, by the preponderance of the evidence, that the

26

amount in controversy exceeds the jurisdictional threshold") (internal alterations omitted);

27

*Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) ("Whether

28

damages are unstated in a complaint, or, in the defendant's view are understated, the

1  defendant seeking removal bears the burden to show by a preponderance of the evidence

2  that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is

3  challenged"); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996)

4  (holding that under the "preponderance of the evidence" standard, "the defendant must

5  provide evidence establishing that it is 'more likely than not' that the amount in

6  controversy exceeds that amount").

7      26.    To satisfy this standard, the "defendants' notice of removal need include only

8  a **plausible allegation** that the amount in controversy exceeds the jurisdictional threshold."

9  *Dart Cherokee Basin Operating Co., LLC*, 135 S. Ct. at 554 (emphasis added); *see also*

10 *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) ("Because some

11 remnants of our former antiremoval presumption seem to persist, we reaffirm three

12 principles that apply in CAFA removal cases.  First, a removing defendant's notice of

13 removal 'need not contain evidentiary submissions' but only plausible allegations of the

14 jurisdictional elements"; "An assertion that the amount in controversy exceeds the

15 jurisdictional threshold is not defeated merely because it is equally possible that damages

16 might be 'less than the requisite … amount'").

17     27.    The burden of establishing the jurisdictional threshold "is not 'daunting,' and

18 the removing defendant is not obligated to research, state, and prove the plaintiff's claims

19 for damages."  *Steele v. W.W. Grainger, Inc.*, No. 13CV895 AJB BGS, 2013 WL 2481476

20 at *3 (S.D. Cal. Jun. 10, 2013); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117

21 (9th Cir. 2004) ("the parties need not predict the trier of fact's eventual award with one

22 hundred percent accuracy").

23     28.    For purposes of ascertaining the amount in controversy, the "inquiry begins

24 with the plaintiff's complaint."  *Salatino v. American Airlines, Inc.*, 719 F.Supp.3d 1094,

25 1099 (S.D. Cal. 2004) (denying plaintiff's motion for remand of a class action for claims

26 under the California Labor Code for missed meal and rest periods).  However, as explained

27 by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not

28 confined to the face of the complaint."  *Valdez*, 372 F.3d at 1117.  "The parties may submit

evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount-in-controversy at the time of removal." *Ibarra*, 775 F.3d at 1197 (internal quotations and citations omitted). A removing defendant may rely on "a chain of reasoning that includes assumption to satisfy its burden" so long as it is "reasonable." *Id*. at 1199.

29.    If a plaintiff asserts statutory violations, **the court must assume that the violation rate is 100%** unless the plaintiff specifically alleges otherwise:

> As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations. Plaintiff is the "master of [her] claim[s]," and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought. She did not.

*Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007) (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (holding "assumption of a 100 percent violation rate may have been reasonable based on the allegations in the Complaint," which "offered no guidance as to the frequency of the alleged violations, only that [d]efendant had 'a policy and practice' of meal and rest period violations").

30.    Numerous other District Courts have similarly concluded that alleging a policy of noncompliance in a complaint justifies the assumption of a 100 percent violation rate. *See Brumbach v. Hyatt Corp.*, 2021 WL 926692, at *9 (S.D. Cal. Mar. 11, 2021) (where a plaintiff alleges a "consistent and uniform policy," it is reasonable to assume that every single employee who separated from employment suffered unpaid wages); *Cocroft v. EquipmentShare.com Inc.*, 2024 WL 3877274, at *9 (S.D. Cal. Aug. 19, 2024) ("allegations of a 'uniform policy and practice' … give rise to a 100% violation rate").

31.    In this case, Plaintiff seeks to recover, on behalf of herself and the purported class, unpaid minimum and overtime wages, meal and rest break penalties, unpaid paid sick leave, damages and penalties related to failure to provide accurate itemized statements, waiting time penalties, alleged unreimbursed business expenses, and restitution based on

1  alleged unfair competition.  (Compl., ¶¶ 50-94, Prayer for Relief.)  Plaintiff also seeks

2  attorneys' fees and costs.  (*Id*.)

3      32.    As explained in detail below, the alleged amount in controversy, implicated

4  by the classwide allegations, exceeds **$10 million**, even under conservative assumptions

5  discussed herein and even without taking into account all of the causes of action.  All

6  calculations supporting the amount in controversy are based on allegations in the

7  Complaint, assuming, without any admission of the truth of the facts alleged and that

8  liability is established ***solely*** for the purposes of this Notice of Removal.

9                  **1.    Unpaid Overtime Wages**

10     33.    Plaintiff's second cause of action seeks recovery for unpaid overtime wages.

11  (Compl., ¶ 26) ("Defendants failed to pay Plaintiff and the class members overtime wages

12  and the lawful rate of pay for overtime hours worked, resulting in unpaid overtime

13  wages").  Specifically, Plaintiff alleges that she and the class members were "forced to

14  clock out and keep working during their meal periods" due to the "high volume of

15  work …. [that they were] required to complete **daily**."  (Compl., ¶ 24.) (emphasis added).

16  Plaintiff also alleges that she and the class members were "forced to complete any work

17  they did not finish during their scheduled hours home to complete, while off-the-clock"

18  and failed to pay overtime at the proper rate of pay.  (Compl., ¶¶ 25, 29, and 30.)

19     34.    A review of the time records of putative class members shows that they were

20  regularly scheduled to, and worked, an eight-hour shift, five days per week.  (Tuupo Decl.,

21  ¶ 6c.)  Given Plaintiff's allegation that she and the putative class members had a high

22  volume of work required to complete **daily**, Defendants can assume that **all** of the alleged

23  off-the-clock time amounts to unpaid overtime worked each day by each of the putative

24  class members.

25     35.    Due to the absence of allegations regarding the frequency of the alleged

26  violations, Defendants are entitled to assume a 100% violation rate.  *Bryant*, 284 F. Supp.

27  3d at 1151.  Moreover, courts in the Ninth Circuit have routinely accepted estimates based

28  on one to two hours "unpaid overtime per putative class member per week."  *Long v.*

DEFENDANTS' NOTICE OF REMOVAL

315653364v.8

*Destination Maternity Corp.,*, 2016 WL 1604968, at *7 (S.D. Cal. Apr. 21, 2016) (citing *Jasso v. Money Mart Exp., Inc.*, No. 11-CV-5500, 2012 WL 699465, at 5 (N.D. Cal. Mar. 1, 2012); *Cocroft*, 2024 WL 3877274, at *9 (S.D. Cal. Aug. 19, 2024) (finding reasonable an "assumption of 1.25 hours per week" where Plaintiff alleged "policies and practices" depriving employees of overtime pay); *Maharaj v. Charter Communications, Inc.*, 2021 WL 4473175, at *9 (S.D. Cal. Sep. 30, 2021) (assumption that each class member worked one hour of overtime each week off-the-clock is supported where the complaint alleged that employer "'systematically' violated wage-and-hour provisions of the California Labor Code").

36.    The statute of limitations for unpaid overtime wages is three years (Cal. Civ. Proc. Code § 338), and it is extended to four years when a plaintiff also seeks restitution for the Labor Code violations under the UCL.  *Falk v. Children's Hosp. Los Angeles*, 237 Cal. App. 4th 1454, 1462, n.12 (2015) (holding that "actions for restitution and under Business and Professions Code section 17200 are subject to a four-year statute of limitation").  In addition to this, Plaintiff alleges that the statute of limitations should be further extended 178 days due to the tolling period set by Emergency Rule 9 during the Covid-19 Pandemic, so the limitations period for the overtime claim would be June 21, 2020 to the present.  However, Defendants will conservatively assume that the statute of limitations only goes back four years from the filing date of Plaintiff's Complaint, which would be from December 16, 2020 to the present.

37.    During the time period from December 16, 2020 to the present, the putative class members worked a total of approximately **50,805 workweeks**.  (Tuupo Decl., ¶ 6e.)  The approximate average hourly rate[2] of the non-exempt employees during this time period was **$29.96**.  (Tuupo Decl., ¶ 6d.)

---

[2] Defendants will use the more conservative average employee hourly rate only, as opposed to the ***regular rate of pay*** which would take into account shift premiums/ differential pay (as alleged by Plaintiff).  As such, this calculation **underestimates** the potential amount in controversy.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

38.     Based on a conservative estimate of one hour of overtime per putative class members per week, the amount in controversy for this claim alone would be **$2,283,176.70** ($29.96/hr x 1.5 overtime multiplier x 50,805 workweeks).

### 2.     Meal and Rest Break Violations

#### a.     Meal Breaks

39.     Plaintiff's third cause of action, for meal period violations, is based on Plaintiff's allegation that Plaintiff and the putative class members "routinely experienced missed, late, short, and interrupted first and second meal periods to keep up with the high demands and strict deadlines of the job." (Compl., ¶ 36.)  Plaintiff further alleges that the putative class members "often worked through their meal periods" because, for instance, Plaintiff was required to "complete all quality control test and accompanying paperwork within 24-48 hours of assignment." (Compl., ¶ 37.)  Finally, Plaintiff alleges that "Defendants had a policy and practice of actively avoiding paying all owed meal period premiums for these non-compliant meal periods by requiring Plaintiff and the class members clock out and report a compliant meal period." (Compl., ¶ 38.)  For purposes of this removal, Defendants will assume that each proposed class member had *one* alleged non-compliant meal period each workweek.

40.     California district courts have consistently upheld comparable or even higher assumptions of meal period violations as plausible for purposes of determining the amount in controversy.  *See, e.g., Evers v. La-Z-Boy Incorporated*, 2022 WL 2966301, at *5 (S.D. Cal. Jul. 27, 2022) ("District courts in this circuit have found violation rates ranging from 25% to 60% can be reasonably assumed as a matter of law based on pattern and practice or policy and practice allegation") (internal quotations omitted); *Olson v. Becton, Dickinson and Company*, 2019 WL 4673329, at *5 (S.D. Cal. Sep. 25, 2019) (assumption of 25% violation rate consisting of five violations per pay period for meal and rest period violations was reasonable based on pattern and practice allegations); *Bryant*, 284 F. Supp. 3d at 1151 (finding it reasonable to assume putative class members missed three meal

Case No. _____

DEFENDANTS' NOTICE OF REMOVAL

315653364v.8

periods per workweek where the complaint offered that Defendant had "'a policy and practice' of meal [ ] period violations").

41.    Although Defendants deny that Plaintiff or any proposed class member suffered any meal period violations, assuming only one meal period violation per week for each proposed class member, the amount of controversy for Plaintiff's meal period claim would be **$1,522,117.80** ($29.96/hr x 1 hr x 50,805 workweeks).

### b.    Rest Breaks

42.    Plaintiff's fourth cause of action, for rest period violations, is based on Plaintiff's allegation that "Defendants had a policy and practice of denying these employees their entitled rest periods" similar to the meal periods. (Compl., ¶ 41.) Again, based on Plaintiff's allegations that Defendants had a "policy and practice," Defendants will, again, ***conservatively*** assume that each proposed class member had only ***one*** alleged non-compliant rest break each workweek.

43.    Courts have consistently upheld even less conservative assumptions for determining the amount in controversy. *See, e.g., Vallejo v. Sterigenics U.S., LLC*, 2021 WL 2685348, at *3 (S.D. Cal. Jun 29, 2021) (based on the complaint's "policy and practice," "regular," and "routine meal and rest period violations," a combined meal and rest period violation of "50% violation rate is reasonable"); *Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755, at *4 (C.D. Cal. May 21, 2015) (finding an estimate of five missed rest periods a week reasonable); *Lopez*, 2015 WL 2342558, at *2 (finding an estimate of five rest period violations was reasonable); *accord Arias,* 936 F.3d at 926 (holding that "Marriott's assumptions are plausible" where it assumed "one missed rest break" as the "lowest assumed violation rate").

44.    Although Defendants deny that Plaintiff or any proposed class member suffered any rest period violations, assuming one rest period violation per week for each proposed class member, the amount in controversy for Plaintiff's rest period claim would be **$1,522,117.80** ($29.96/hr x 1 hr x 50,805 workweeks).

13

Case No. _____

DEFENDANTS' NOTICE OF REMOVAL

315653364v.8

45.    In sum, the total amount in controversy for Plaintiff's third and fourth causes of action for meal and rest period violations would be **$3,044,235.60**.

### 3.    Wage Statement Penalties

46.    Plaintiff's seventh cause of action seeks wage statement penalties, based on her allegation that "Defendants' unlawful acts and omissions deprived Plaintiff and class members of accurate itemized wage statements, causing confusion and concealing wage and premium underpayments."  (Compl., ¶ 80.)

47.    Labor Code § 226(e) provides a minimum of $50 for the initial violation as to each employee, and $100 for each further violation as to each employee, up to a maximum penalty of $4,000 per employee.  The statute of limitations for recovery of penalties under Labor Code § 226 is one year.  *Caliber Bodyworks, Inc. v. Sup. Ct.*, 134 Cal. App. 4th 365, 376 (2005); Cal. Civ. Proc. Code § 340(a).  Because Plaintiff filed her Complaint on July 16, 2024, the statutory period for the claim under California Labor Code § 226 runs from December 16, 2023 to the present.

48.    During the limitations period of December 16, 2023 to the present, there were approximately 292 potential class members with 11,815 total weeks worked.  (Tuupo Decl., ¶ 6g.)  There were 144 non-exempt employees who worked more than 40 workweeks between December 16, 2023 to the present.  (*Id*.)  The remaining 148 non-exempt employees worked 4,212 workweeks between December 16, 2023 to the present.  (*Id*.)  Abbott generally paid non-exempt employees on a weekly basis, so at least 11,815 wage statements were issued to these employees based on the number of weeks worked.  (*Id*.)  Although Defendants dispute liability, when including a $50 penalty for the initial wage statement and $100 for each subsequent wage statement (to a maximum of $4,000 per employee), the amount in controversy on this claim would be no less than **$989,800.00** [(144 employees x $4,000 (maximum penalty) + ($50 x 148 remaining potential class) + ($100 x 4,064 pay periods (subsequent wage statements))].

Case No. _____

DEFENDANTS' NOTICE OF REMOVAL

315653364v.8

### 4.    Waiting Time Penalties

49.    Plaintiff's eighth cause of action seeks waiting time penalties based on the allegation that "Defendants willfully failed and continue to fail in their affirmative obligation to pay all wages earned and unpaid to Plaintiff and class members immediately upon termination of employment or within 72 hours thereafter for employees who did not provide at least 72 hours prior notice of his or her termination to quit, and further failed to pay those sums for 30 days thereafter in violation of Labor Code sections 201 through 203 and the IWC Wage Orders."  (Compl., ¶ 84.)

50.    Under California Labor Code § 203, a discharged employee not timely paid all wages owed is entitled to penalties of up to 30 days' pay at his or her regular pay.  *See* Lab. Code § 203(a) ("If an employer willfully fails to pay… any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days").

51.    The statute of limitations period for California Labor Code § 203 penalties extends back three years from the date of filing of the Complaint, which is December 16, 2021 in this case.  *See Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1399 (2010) ("if an employer failed to timely pay final wages to an employee who quit or was fired, the employee would have had one year to sue for the section 203 penalties but, under Code of Civil Procedure section 338, subdivision (a) (Stats.1935, ch. 581, § 1, p. 1673), three years to sue for the unpaid final wages giving rise to the penalty").

52.    It is reasonable to assume an entitlement to the maximum 30-day waiting time penalty where "the vast majority… of the alleged violations over the [class period] at issue… would have happened more than 30 days before the suit was filed."  *Jauregui v. Roadrunner Transp. Servs. Inc.,* 28 F.4th 989, 994 (9th Cir. 2022); *Tajonar v. Echosphere, LLC*, 2015 WL 4064642, at *4-5 (S.D. Cal. July 2, 2015) (finding reasonable the defendant-employer's assumption that each employee was entitled to the maximum thirty-day penalty).  This assumption is particularly reasonable where a plaintiff fails to specify if

DEFENDANTS' NOTICE OF REMOVAL

or when Defendants did properly pay wages due at termination.  *See, e.g., Watson v. San Diego Dialysis Servs., Inc.,* 2024 WL 4679117 , at *5 (S.D. Cal. Nov. 5, 2024) ("Based on these allegations of a 'pattern and practice' of regularly failing to pay the correct wages, it is reasonable to assume that each, or nearly all, of the former employees experienced at least one wage violation during the three years at issue and that these violations would have happened more than thirty days before the suit was filed").

53.    During the relevant three-year time period for waiting time penalties, from December 16, 2021 to the present, there were 272 non-exempt employees of Defendants in California whose employment ended, and their average rate of final pay was $29.00 per hour.  (Tuupo Decl., ¶ 6f.)

54.    Although Defendants dispute liability, a reasonable estimate of the amount in controversy for waiting time penalties is **$1,893,120.00** ($29.00/hr x 8 hrs/day x 30 days x 272 former non-exempt employees).

### 5.    Attorneys' Fees

55.    Plaintiff also seeks attorneys' fees.  (Compl., ¶¶ 6, 53, 57, 62, 72, 76, 81, 85, 88, 94, Prayer for Relief.)  Requests for attorneys' fees must also be taken into account in ascertaining the amount in controversy.  *Fritsch v. Swift Transp. Co. of Ariz.,* 899 F.3d 785, 794 (9th Cir. 2018) ("a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met"); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees are to be included in amount in controversy, regardless of whether award is "mandatory or discretionary").  Indeed, the Ninth Circuit explicitly confirmed that "when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy," including in the context of determining CAFA jurisdiction and as a "principle[] that appl[ies] in CAFA removal cases."  *Arias*, 936 F.3d at 922.

56.    A reasonable estimate of fees likely to be recovered may be used in calculating the amount in controversy.  *Longmire v. HMS Host USA, Inc.*, 2012 WL

Case No. _____

DEFENDANTS' NOTICE OF REMOVAL

315653364v.8

5928485, at *9 (S.D. Cal. Nov. 26, 2012) ("[C]ourts may take into account reasonable estimates of attorneys' fees likely to be incurred when analyzing disputes over the amount in controversy under CAFA") (citing *Brady*, 243 F. Supp. 2d at 1010–11).

57.     In the class action context, courts have found that 25 percent of the aggregate amount in controversy is an appropriate benchmark for attorneys' fees awards.  *Staton v. Boeing Co.,* 327 F.3d 938, 968 (9th Cir. 2003) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees"); *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012) (attorneys' fees appropriately included in determining amount in controversy under CAFA); *Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000) ("We have also established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach").  Notably, however, attorneys' fee awards in excess of 25% are common.  *See, e.g., Loreto v. Gen. Dynamics Info. Tech., Inc.,* 2022 WL 3013029, at *32 (S.D. Cal. Feb. 2, 2022) (approving attorneys' fees award of approximately one third of the maximum settlement amount); *Scott v. Blackstone Consulting, Inc*., 2024 WL 271439, at *27 (S.D. Cal. Jan. 24, 2024) (same).

58.     Although Defendants dispute liability, even under the conservative benchmark of 25 percent of the total amount in controversy for Plaintiff's claims, attorneys' fees alone would be more than **$2,052,583.08** in this case, which is 25% of the amount in controversy for five of the ten claims alleged in the Complaint and discussed above, which total **$8,210,332.30**.

### 6.     The Total Aggregate Amount In Controversy Exceeds $5 Million

59.     Based solely on the five causes of action plus attorneys' fees considered above, the class-wide potential amount in controversy, ***conservatively*** estimated, is **$10,262,915.38.**  This showing as to the amount in controversy satisfies the standard for removal:

| Cause of Action | Amount in Controversy Based on the Complaint's Allegations |
|---|---|
| Overtime Wages | $2,283,176.70 |
| Meal Period Violations | $1,522,117.80 |
| Rest Period Violations | $1,522,117.80 |
| Wage Statement Penalties | $989,800.00 |
| Waiting Time Penalties | $1,893,120.00 |
| Attorneys' Fees | $2,052,583.08 |
| **TOTAL** | **$10,262,915.38** |

Of course, this calculation **_does not_** take into account Plaintiff's additional causes of action, such as minimum wages, paid sick leave, untimely payment of wages during employment, and failure to reimburse business expenses. Even though Defendants have not assigned any particular amount to Plaintiff's remaining causes of action, assignment of any sum increases the amount in controversy well-beyond the $5,000,000 jurisdictional threshold.[3]

60.     Although Defendants deny Plaintiff's allegations that she and/or the potential class are entitled to any relief, based on Plaintiff's allegations and prayer for relief, and conservative estimates based on those allegations, the total potential amount in controversy far exceeds the $5,000,000 threshold set forth under 28 U.S.C. § 1332(d)(2) for removal jurisdiction.

61.     Because both minimal diversity of citizenship exists, and the amount in controversy exceeds $5,000,000, this Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332(d)(2). This action is therefore a proper one for removal to this Court pursuant to 28 U.S.C. § 1441(a).

**IV. VENUE**

62.     Venue lies in the United States District Court for the Southern District of California, pursuant to 28 U.S.C. §§ 1391(a), 1441, and 84(c). This action was originally

---

[3] In response to any motion to remand, Defendants reserve the right to assign amounts to Plaintiff's remaining causes of action or to adjust the above assumed violation rates.

DEFENDANTS' NOTICE OF REMOVAL

315653364v.8

brought in the Superior Court of the State of California for the County of San Diego, which is located within the Southern District of California.  Therefore, venue is proper because it is the "district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

## V. NOTICE TO STATE COURT AND TO PLAINTIFF

63.    Defendants will give prompt notice of the filing of this Notice of Removal to Plaintiff and to the Clerk of the Superior Court of the State of California for the County of San Diego.  A true and correct copy of this Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California for the County of San Diego, as required under 28 U.S.C. § 1446(d).

## VI. PRAYER FOR REMOVAL

64.    WHEREFORE, Defendants pray that this civil action be removed from the Superior Court of the State of California for the County of San Diego to the United States District Court for the Southern District of California.

DATED: January 17, 2025                    Respectfully submitted,

                                           SEYFARTH SHAW LLP


                                           By:  */s/Michele J. Beilke*
                                           Michele J. Beilke
                                           Julia Y. Trankiem
                                           David J. Kim
                                           Attorneys for Defendants
                                           ALERE SAN DIEGO, INC. and
                                           ABBOTT LABORATORIES

                                                    Case No. _____
DEFENDANTS' NOTICE OF REMOVAL

315653364v.8